UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

JAMES EDWARD SANDFORD III,

                Plaintiff,                Case # 16-CV-6187-FPG

      v.                                    DECISION AND ORDER

CLAY RUGAR, et al.,

                Defendants.
───────────────────────────────────────

## **INTRODUCTION**

*Pro se* Plaintiff James Edward Sandford III is confined at the Livingston County Jail. He filed a Complaint asserting claims under 42 U.S.C. § 1983 and alleging that Defendants failed to treat his broken arm. ECF No. 1. The Court dismissed the Complaint without prejudice for failure to state a claim upon which relief can be granted and gave Plaintiff leave to file an amended complaint. ECF No. 12. Plaintiff timely filed an Amended Complaint and moved to appoint counsel. ECF Nos. 13, 14.

For the reasons that follow, Plaintiff's claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and his motion for counsel is denied as moot.

## **DISCUSSION**

### **I.**     **Legal Standard**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court must dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity or its officer or employee if it determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks

monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). "Specific facts are not necessary" and the plaintiff "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation and quotation marks omitted). A court must liberally construe *pro se* pleadings, "particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), but *pro se* pleadings must still meet the notice requirements of Federal Rule of Civil Procedure 8, *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).

## II.     Plaintiff's Allegations

Plaintiff sues various Yates County Jail ("the Jail") lieutenants, sergeants, corrections officers, a doctor, two nurses, and a Penn Yan Police Department sergeant, investigator, and patrolman as Defendants in this action for their collective failure to treat Plaintiff's broken arm.

A liberal reading of the Amended Complaint and attached documents[1] tells the following story. Plaintiff was arrested in Yates County on March 24, 2015. At that time, Plaintiff had a broken arm and had been wearing a cast for three weeks. ECF No. 13 at 18. At the Penn Yan Police station, Plaintiff "ripped [his] cast off" and later, at the Jail, was upset and "pounding on

---

[1] The Amended Complaint includes a decision from the grievance coordinator, James Stenzel, who is named as a Defendant in this action, dated April 1, 2015, in response to Plaintiff's grievance # G14-023. ECF No. 13 at 18-19.

the walls of [his] cell". *Id.* Plaintiff told Sergeants Bailey and Crandall, Investigator Dunham, and Officers Stenzel, Brush, and Marsh that he was in "excruciating pain, and begged them for assistance." *Id.* at 10. Plaintiff declined the ice pack that was offered to him. *Id.* at 18.

On March 25, 2015, Nurse Ballard arranged to have Plaintiff's arm x-rayed at "S&S hospital" and ordered Plaintiff ibuprofen and an ace bandage. *Id.* Officers Stenzel and Kuhner followed orders from Lieutenant Rugar and Sergeant Gridley to bring Plaintiff back to the Jail "before any doctor could administer any medical treatment." *Id.* at 11. Because Nurse Ballard was unable to see Plaintiff until she returned to the Jail on March 27, she instructed "the jail" to wrap Plaintiff's arm in the ace bandage, but did not do anything when "the jail told her 'no'" or prescribe Plaintiff medication. *Id.* at 11, 18.

From March 26 through April 1, 2015, Lieutenant Rugar, Sergeants Gridley and Smith, Officers Shanto, Hoover, Joan, Head, Schaeffer, and Quayle, Nurse Erica, Dr. Dewitt, and various John and Jane Does "did absolutely nothing" for Plaintiff's broken arm after he "specifically asked each of them for help." *Id.* at 13. Additionally, Plaintiff "begged" Sergeant Aaron IV, Officer Carlsen, and John Doe #3 for medical attention but "each one told [Plaintiff] there was nothing they could do because '[Plaintiff] did not have a life-threatening injury, nor did the jail have enough man power to take [Plaintiff] to the hospital.' ([Sergeant] Aaron as quoted by [Officer] Deborah Carlsen)." *Id.* at 13. During this time, it took Nurses Ballard and Erica "over a week to get [Plaintiff] to a medical professional." *Id.* at 16.

On March 31, Plaintiff saw Dr. Dewitt, who arranged for Plaintiff to go to an orthopedic doctor in Geneva, New York the next day, presumably the same doctor he saw when he first broke his arm. *See id.* at 18. On April 1, 2015, Plaintiff saw an orthopedic doctor and was issued a splint for his arm, but Lieutenant Rugar and Nurse Erica removed its support rods. *Id.* at 13, 18-19.

3

**III.    Section 1983**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citation omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

As an initial matter, the Court finds that Plaintiff's conclusory and general allegations fail to establish the individual liability of several of the named Defendants, including Aaron IV, Shanto, Hoover, Head, Schaeffer, Joan, Quayle, Smith, Carlsen, John Does #1, #2, and #3, and Jane Does #1 and #2.² To establish § 1983 liability against a prison official, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of respondeat superior is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). But a supervisory prison official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

---

² Plaintiff alleges that he "pleaded with [Shanto, Hoover, Head, Schaeffer, Joan, Quayle, Smith, John Does #1 and #2, and Jane Does #1 and #2] for medical attention for [his] severely broken arm. Each one . . . did absolutely nothing. [He] specifically asked each of them for help." ECF No. 13 at 12 (emphasis in original). Plaintiff alleges that Aaron IV, Carlsen, and John Doe #3 "denied [him] medical attention for [his] severely broken arm . . . [He] begged each one . . . for medical attention. Each one told [him] that there was nothing they could do. . . ." *Id.* at 13.

4

> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Plaintiff's conclusory allegations that the above-named Defendants collectively failed to respond to his complaints and requests fall woefully short of establishing personal involvement. *See generally* ECF No. 13 at 10-16. Accordingly, the claims against these Defendants are dismissed with prejudice.

To the extent that Plaintiff attempts to state a deliberate indifference claim against the remaining Defendants—Marsh, Dunham, Crandall, Bailey, Stenzel, Brush, Rugar, Gridley, Kuhner, Ballard, Erica, and Dewitt—the Court finds that any such claims must be dismissed. Plaintiff was a pre-trial detainee at the time of the complained-of events, and so the Court reviews his inadequate medical care claims under the more forgiving Fourteenth Amendment due process standard for a pretrial detainee, rather than as an Eighth Amendment claim appropriate for a sentenced prisoner. *See Darnell v Pineiro*, 849 F3d 17, 33 (2d Cir. 2017) (discussing the impact of *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), on Eighth Amendment claims). The Second Circuit, construing the Supreme Court's decision in *Kingsley*, held that a plaintiff asserting a deliberate indifference claim under the Due Process Clause must show that the official intentionally imposed the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the official knew, or should have known, that the condition posed an excessive risk to health or safety. *Id*. at 35. This intentional or reckless conduct standard requires more than mere negligence. *Id.* at 36.

Plaintiff offers only conclusory allegations that Defendants failed to properly care for and treat his broken arm at his arrest and booking and unnecessarily delayed treatment for one week. *See* ECF No. 13. The requirement that "a court must accept a complaint's allegations as true is

5

inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citation and internal quotation marks omitted).

Plaintiff has not set forth factual content that allows the Court to infer that Defendants were deliberately indifferent to his medical condition under the circumstances. Plaintiff alleges, for example, that Marsh, Dunham, Crandall, Bailey, Stenzel, and Brush collectively failed to treat his arm upon his arrival at the Penn Yan Police Department and later at the Jail. *Id* at 10. Similarly, Plaintiff states only that Rugar and Gridley ordered Stenzel and Kuhner to bring him back to the cell after an x-ray and before a doctor saw him at the hospital. *Id*. at 11. Moreover, while it took several days for Nurse Ballard to see Plaintiff and wrap his arm in an ace bandage, Plaintiff's allegations do not suggest that she intentionally withheld or delayed treatment. *Id*. at 11-13, 15, 18. Allegations that Dr. Dewitt failed to provide medical treatment or intentionally delayed treatment are unsubstantiated, because Dr. Dewitt saw Plaintiff on March 31 and arranged for him to see an orthopedic doctor the next day. *Id*. at 18. Finally, Plaintiff's complaints that Rugar and Nurse Erica removed support rods from his splint,[3] show a *mens rea* no greater than mere negligence. In sum, Plaintiff's allegations do not allege facts to satisfy either the seriousness of

---

[3] Plaintiff does not allege that his splint was confiscated, only that its metal rods were removed. ECF No. 13 at 13. Plaintiff's brace contained metal, which can be a security risk. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . ."). A number of courts have upheld prison policies and officials' decisions to confiscate metal knee braces due to security concerns because such policies are generally seen as furthering legitimate penological goals. *See, e.g.*, *Tannenbaum v. Arizona*, No. CV 05-1422-PHX-JAT JRI, 2008 WL 2789589, at *9 (D. Ariz. July 17, 2008) (collecting cases).

deprivation requirement or the mental state requirement of an inadequate medical care claim and are therefore are dismissed with prejudice.

Finally, because Plaintiff's claims will not proceed, Plaintiff's motion to appoint counsel is denied as moot.

## **CONCLUSION**

For the reasons stated, the Amended Complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and Plaintiff's motion to appoint counsel (ECF No. 14) is denied as moot. The Clerk of Court is directed to close this case.

Plaintiff is warned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under these provisions. *See* 28 U.S.C. § 1915(g).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal pas a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct further requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit in accordance with Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: June 20, 2018
       Rochester, New York

                                               HON. FRANK P. GERACI, JR.
                                               Chief Judge
                                               United States District Court